IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

CYNTHIA L. SHELTON                                                                                  PLAINTIFF

V.                                    CIVIL NO. 2:14-CV-02198-MEF

CAROLYN W. COLVIN, Commissioner
Social Security Administration                                                              DEFENDANT

# MEMORANDUM OPINION

Plaintiff, Cynthia L. Shelton, brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of the Social Security Administration ("Commissioner") denying her claim for a period of disability and disability insurance benefits ("DIB") and disabled widow's insurance benefits ("WIB") under the provisions of Title II of the Social Security Act ("Act"). In this judicial review, the Court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. *See* 42 U.S.C. § 405(g).

## I.  Procedural Background

Plaintiff filed her applications for DIB and WIB on July 15, 2011 (T. 171-177, 178-184), alleging an inability to work since July 23, 2010, due to closed fracture of thoracic vertebra and tibia plateau fracture (T. 198). For DIB purposes, Plaintiff's date last insured is March 31, 2014, and the end of her prescribed period for WIB is November 30, 2012. (T. 195) Plaintiff's claims were denied initially on September 13, 2011, and denied on reconsideration on December 12, 2011. (T. 95-97,

98-100, 104-105, 106-107) Plaintiff requested an administrative hearing (T. 108-109), and a hearing was held on March 14, 2013. (T. 63-90) Plaintiff appeared with counsel and testified. (T. 68-86) A vocational expert ("VE"), Floyd John Massey, was also present and testified. (T. 86-89)

At the time of hearing Plaintiff was 50 years of age, and she possessed a high school education. (T. 69) Plaintiff had work experience as a bank teller and as a customer service representative. (T. 71-72, 223)

By a written Decision dated May 17, 2013, the Administrative Law Judge ("ALJ"), Hon. Harold D. Davis, determined that Plaintiff's residuals of injuries received in a motorcycle accident, fractures of T3, T4 and T8, and right tibia plateau fracture, status post open reduction internal fixation were severe impairments, but that Plaintiff's impairments did not meet or equal the level of severity of any impairment listed in the Listing of Impairments. (T. 51-52) After discounting Plaintiff's credibility, the ALJ found that Plaintiff retained the residual functional capacity ("RFC") to perform the full range of sedentary work as defined in 20 CFR § 404.1567(a). (T. 52-56) The ALJ determined that Plaintiff could perform her past relevant work ("PRW") as a customer service representative. (T. 57) The ALJ then found that Plaintiff had not been under a disability from July 23, 2010 through the date of his Decision. (T. 57)

Plaintiff requested a review of the hearing decision by the Appeals Council on June 30, 2013. (T. 43-44). Plaintiff then submitted additional documentation in support of her claims, including hospital records from Eastern Oklahoma Medical Center dating from October 31, 2013 through November 4, 2013. (T. 11, 12-42) The Appeals Council denied Plaintiff's request for review on July 25, 2014 and again on August 19, 2014. (T. 1-5, 6-10) Plaintiff then filed this action on September 17, 2014. (Doc. 1) This case is before the undersigned pursuant to the consent of the parties. (Doc.

7) Both parties have filed appeal briefs (Docs. 10, 12), and the case is ready for decision.

## II. Applicable Law

This Court's role is to determine whether substantial evidence supports the Commissioner's findings. *Vossen v. Astrue*, 612 F.3d 1011, 1015 (8th Cir. 2010). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. *Teague v. Astrue*, 638 F.3d 611, 614 (8th Cir. 2011). The Court must affirm the ALJ's decision if the record contains substantial evidence to support it. *Blackburn v. Colvin,* 761 F.3d 853, 858 (8th Cir. 2014). As long as there is substantial evidence in the record that supports the Commissioner's decision, the court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the court would have decided the case differently. *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015). In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the Court must affirm the ALJ's decision. *Id*.

A claimant for Social Security disability benefits has the burden of proving her disability by establishing a physical or mental disability that has lasted at least one year and that prevents her from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *see also* 42 U.S.C. § 423(d)(1)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). A plaintiff must show that her disability, not simply her impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require her to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing his or her claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given his or her age, education, and experience. *See* 20 C.F.R. § 404.1520(a)(4). Only if he reaches the final stage does the fact finder consider the Plaintiff's age, education, and work experience in light of his or her residual functional capacity. *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C.F.R. § 404.1520(a)(4)(v).

### III. Discussion

Plaintiff argues on appeal: (1) that the ALJ failed to fully and fairly develop the record; (2) that the ALJ failed to properly evaluate Plaintiff's credibility; (3) that the ALJ erred in his RFC determination; and, (4) that the ALJ erred in his step four determination that Plaintiff could return to her past relevant work as a customer service representative.

Based upon a thorough review of the record, the Court concludes that the ALJ failed to fully and fairly develop the record in order to properly assess Plaintiff's physical RFC.

The ALJ has a duty to fully and fairly develop the record. *See Frankl v. Shalala*, 47 F.3d 935, 938 (8th Cir. 1995) (ALJ must fully and fairly develop the record so that a just determination of disability may be made). This duty exists "even if ... the claimant is represented by counsel." *Boyd v. Sullivan*, 960 F.2d 733, 736 (8th Cir. 1992) *(quoting Warner v. Heckler*, 722 F.2d 428, 431 (8th Cir. 1983)). This is so because an administrative hearing is not an adversarial proceeding. *Snead v.*

*Barnhart,* 360 F.3d 834, 838 (8th Cir. 2004). The ALJ possesses no interest in denying benefits and must act neutrally in developing the record. *Id*. "[T]he goals of the Secretary and the advocates should be the same: that deserving claimants who apply for benefits receive justice." *Sears v. Bowen,* 840 F.2d 394, 402 (7th Cir. 1988). "Moreover, '[a]n adequate hearing is indispensable because a reviewing court may consider only the Secretary's final decision [and] the evidence in the administrative transcript on which the decision was based.'" *Battles v. Shalala*, 36 F.3d 43, 44-45 (8th Cir. 1994) *(quoting Higbee v. Sullivan*, 975 F.2d 558, 562 (9th Cir. 1992) (per curiam)). There is no bright line rule indicating when the Commissioner has or has not adequately developed the record; but rather, such an assessment is made on a case-by-case basis. *Id*.

It is incumbent upon the ALJ to establish by medical evidence that the claimant has the requisite RFC. If a treating physician has not issued an opinion which can be adequately related to the disability standard, the ALJ is obligated to address a precise inquiry to the physician so as to clarify the record. *See Vaughn v. Heckler*, 741 F.2d 177, 179 (8th Cir. 1984); *Smith v. Barnhart*, 435 F.3d 926, 930 (8th Cir. 2006) (duty to develop record may include seeking clarification from treating physician if a crucial issue is undeveloped or underdeveloped).

Plaintiff was involved in an accident on July 23, 2010 when she fell off the back of a motorcycle. She felt an immediate onset of moderate, constant pain in her upper back and neck. (T. 268) CT scan of Plaintiff's thoracic spine revealed fracture through the superior end plates of T3, T4, and T8, with mild concavity of the superior end plates of the vertebral bodies; there was no evidence of spondylolisthesis or retropulsed fracture fragments. (T. 274) She sought follow-up care from Janet Canada, A.P.N., R.N., at River Valley Musculoskeletal Center on August 10, 2010, at which time she reported pain radiating through her chest wall, exacerbated by taking a deep breath,

walking, sitting, bending, lifting, coughing and sneezing. She was staying in bed most of the time and taking pain medication due to the pain when she moved. She felt that her symptoms were about fifty percent improved. (T. 292) She was diagnosed as having thoracic pain due to traumatic T3, T4, and T8 end plate fractures. She was placed on a muscle relaxer to be used as needed for muscle spasms, and she was referred to be fitted for a Jewett brace. She was instructed to remain in the brace if out of bed for six weeks. At that time, a follow-up CT scan would be performed, and if her fractures were stabilized and healed, she could remove the brace and increase her activities as tolerated. (T. 293-294)

      Plaintiff next saw A.P.N. Canada on September 22, 2010, at which time she presented with complete resolution of her thoracic spine pain, but she had suffered a new injury, having fallen and fractured her right tibia. Her thoracic spine symptoms were at that time asymptomatic, and a repeat CT scan showed the T3, T4, and T8 fractures were stable, no displacements, and were healing. She was instructed to wean herself off the Jewett brace, leaving it off while in the house but wearing it while riding in a car or outside the home, for another four weeks. Further evaluation of her back with the flexion and extension of her thoracic spine to make sure she had no displacement was planned. (T. 283)

      As noted just above, Plaintiff suffered a fall in her garage on September 3, 2010, resulting in a fracture of the lateral tibial plateau with depression of the superior aspect of the right tibial plateau, and a fracture of the medial tibial spine. (T. 256-258, 266-267) An open reduction and internal fixation of Plaintiff's fractured right lateral tibial plateau was performed on September 4, 2010 by orthopaedic surgeon, James W. Long, M.D., followed by a Bledsoe brace (T. 264-265) Plaintiff received follow-up treatment from Dr. Long for her knee injury including aspiration of joint

fluid on September 8 and 22, 2010. (T. 285, 288) On November 1, 2010, Dr. Long noted that x-rays showed Plaintiff's fractured right tibial plateau to be healing in good position and alignment, with no effusion; she was taken out of the Bledsoe brace; started on active range of motion exercises; and, she was told to continue using crutches and not bear weight if she has pain, but to begin weaning herself from the crutches toward full weight bearing. (T. 281) Plaintiff was referred to therapy for instruction in quad exercises and ice massage. (T. 281) Plaintiff saw the therapist on November 4, 2010, and she was instructed in range of motion and strengthening exercises as part of a home exercise program. (T. 277)

Plaintiff went to her primary care physician, Vikki Sutterfield, M.D., for further treatment of her back and right knee. On October 12, 2011, she reported that her back was still hurting a lot, that she had been "working out at home[1]," was having some swelling in her knee when she walked, and she was having some foot numbness. (T. 318)

Dr. Sutterfield completed medical source statements on November 23, 2011 and on December 31, 2012. (T. 349-351, 398-401) Dr. Sutterfield had been Plaintiff's treating physician since approximately 2002. (T. 81) Among her conclusions, Dr. Sutterfield opined that Plaintiff could stand/walk three hours in an eight hour workday, with less than one hour continuously; could sit a total of four hours in an eight hour workday, with less than two hours continuously; would require three to four breaks in an eight hour workday; and, would require elevation of her lower extremities three to four times per day. (T. 349, 398)

A treating physician's medical opinion is given controlling weight if that opinion is

---

[1] Not "working out of her home" as incorrectly noted by the ALJ, a misreading of the record that clearly affected his negative assessment of Plaintiff's credibility. (T. 54, 56)

"well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(d)(2). These opinions are not automatically controlling, however, because the record must be evaluated as a whole. *Reed v. Barnhart*, 399 F.3d 917, 920 (8th Cir. 2005). We will uphold an ALJ's decision to discount or even disregard the opinion of a treating physician where "other medical assessments are supported by better or more thorough medical evidence, or where a treating physician renders inconsistent opinions that undermine the credibility of such opinions." *Id.* at 920-21 (internal quotations omitted).

Here, the ALJ discounted Dr. Sutterfield's opinions because they appeared to rely "quite heavily" on Plaintiff's subjective report of symptoms and limitations, and that "there exist good reasons for questioning the reliability of the claimant's subjective complaints[2]." (T. 56) The ALJ's decision to discount Dr. Sutterfield's medical source statements was not based upon any better or more thorough medical evidence. To the contrary, the ALJ also discounted and gave little weight to the opinions of the non-examining State agency medical consultants regarding Plaintiff's physical RFC. (T. 56) Therein lies the problem in this case. In *Lauer v. Apfel*, 245 F.3d 700, 704 (8th Cir. 2001), the Eighth Circuit clearly held that a "claimant's residual functional capacity is a medical question," that "some medical evidence" must support the determination of the claimant's RFC, and that "the ALJ should obtain medical evidence that addresses the claimant's 'ability to function in the workplace.'" (Internal citations omitted.) Having disregarded both Dr. Sutterfield's RFC opinion and the opinions of the non-examining State agency medical consultants, the ALJ has, as Plaintiff puts

---

[2] Again, stemming in part from the ALJ's misreading of Dr. Sutterfield's October 12, 2011 progress note that Plaintiff was "working out of her home" as opposed to "working out at home" in lieu of physical therapy.

it, pulled the sedentary exertional limitation "out of thin air." (Doc. 10, p. 7) Doing so is tantamount to the ALJ "playing doctor," a practice forbidden by law. *Pate-Fires v. Astrue*, 564 F.3d 935, 947 (8th Cir. 2009), citing *Rohan v. Chater*, 98 F.3d 966 (7th Cir. 1996) ("ALJs must not succumb to the temptation to play doctor and make their own independent medical findings").

Compounding this error was the ALJ's disregard of two pre-hearing requests by Plaintiff for an "Orthopaedic Consultative Examination with radiology and/or other objective testing, and examiner completion of RFC form." (T. 206, 209) These requests were reiterated in Plaintiff's Pre-Hearing Memorandum to the ALJ. (T. 237, 239)

Accordingly, the ALJ's decision is not supported by substantial evidence, and the case must be reversed and remanded. On remand, the ALJ is directed to re-contact Plaintiff's treating physicians, Dr. Vikki Sutterfield and Dr. Mark Rogow[3], to address interrogatories to them requesting complete physical RFC assessments. Any questions the ALJ has concerning their RFC assessments should be addressed, allowing the treating physicians the opportunity to provide an explanation for the limitations assigned. If those physicians are unwilling or otherwise unable to complete physical RFC assessments, then the ALJ is directed to order a consultative orthopaedic examination, complete with a detailed physical RFC assessment. The ALJ should then reassess Plaintiff's RFC, taking into account all of her impairments, and conduct a thorough step four and, if necessary, step five analysis.

### IV. Conclusion

Having carefully reviewed the record, the undersigned finds there is not substantial evidence supporting the ALJ's decision denying the Plaintiff benefits, and therefore, the case should be

---

[3] Mark Rogow, M.D. began treating Plaintiff on July 1, 2013, and he provided a medical source statement on August 7, 2013, after the ALJ's Decision was issued on May 17, 2013. (T. 453)

reversed and remanded to the Commissioner for further consideration pursuant to sentence four of 42 U.S.C. § 405(g).

      DATED this 15th day of December, 2015.

                                            /s/ *Mark E. Ford*
                                            HON. MARK E. FORD
                                            UNITED STATES MAGISTRATE JUDGE